# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## CHATTANOOGA DIVISION

| | |
|---|---|
| RICHARD TABIZON, as an individual and on behalf ofall others similarly situated, | |
| Plaintiff, | Case No. 1:19-cv-00060-CEA-CHS |
| v. | |
| COVENANT TRANSPORT, INC., a Corporation; and DOES 1 through 50, inclusive, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPROVAL OF PAGA SETTLEMENT APPROVAL OF NOTICE TO CLASS MEMBERS AND RELATED MATERIALS, APPROVAL OF SETTLEMENTADMINISTRATOR, AND THE SETTING OF A FINAL APPROVAL HEARING**

## I.     INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff Richard Tabizon has filed a Motion for Preliminary Approval of Class Settlement, Approval of PAGA Settlement, Approval of Notice to Class Members and Related Materials, Approval of Settlement Administrator, and the Setting of a FinalApproval Hearing. Plaintiff, on behalf of himself and the putative Settlement Class[1] , requests that this Court preliminarily approve the proposed Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement") entered into by them and attached as Exhibit 1 to the accompanying Declaration of Larry Lee filed concurrently with

---

[1] The proposed Settlement Class is defined as: all persons who are or were: 1) employed as mileage-paid employee drivers by Covenant Transport, Inc. and 2) California residents at any time from December 21, 2016 through the earlier of either July 28, 2021 or the date of entry of the Preliminary Approval Order.  See Settlement Agreement at ¶ 2 . 8 .

4820-3228-4913.3 / 100662-1001

this Motion.[2]

The Settlement Agreement seeks to fully release and discharge Defendant from the claims brought against it in the above captioned matter (the "Action"). In exchange, Defendant will pay a maximum Gross Settlement Amount of $600,000.00.

The Settlement Agreement and notice distribution plan were the products of non-collusive negotiations by informed counsel and parties after two mediations. Lee Decl., ¶¶12-13. As shown below, the Settlement is fair, reasonable and adequate, because the Gross Settlement Amount constitutes a reasonable risk-adjusted compromise for the value of the claims of the Class at issue, and Defendant's potential defenses to class certification; its substantive defenses, including, but not limited to, the risk of federal preemption, the limited time Defendant's employees spent in California as it relates to the applicability of the California Labor Code, and other substantive defenses. *Id.*, ¶14.

Accordingly, Plaintiff seeks: (1) preliminary approval of the Class Settlement; (2) approval of the PAGA Settlement; (3) provisional certification of the Settlement Class; (4) appointment of Plaintiff as Class Representative; (5) appointment of Edward W. Choi of Law Offices of Choi & Associates, Larry W. Lee of Diversity Law Group, David Lee of David Lee Law, and Joshua Ward of Massey & Associates, P.C. as Class Counsel; (6) approval of the Parties' proposed form and method of notifying Class Members of the Settlement; (7) an order scheduling the hearing date for Final Approval of theClass Settlement; and (8) entry of an Order preliminarily approving the Class Settlement and approving the PAGA Settlement.

## II.     RELEVANT FACTUAL AND LEGAL BACKGROUND

Defendant Covenant Transport, Inc. is a national trucking service that has been in business

---

[2] All capitalized terms appearing in this Motion that are not defined herein shall have the meanings assigned to them in the Joint Stipulation of Class Action Settlement and Release.

4820-3228-4913.3 / 100662-1001

since 1984. Lee Decl., ¶3. Plaintiff Richard Tabizon was a long-haul truck driver for Defendant, who resided in California and was employed by Defendant in California. Declaration of Richard Tabizon ("Tabizon Decl.") ¶2. During the relevant period, Defendant has maintained a California terminal facility in California in Pomona, California. Lee Decl. ¶4 . Plaintiff asserts various claims under the California Labor Code, which Defendant disputes.

### A. Procedural History and the Parties' Discovery and Mediation

On October 31, 2018, Plaintiff filed a complaint in the Superior Court of California for the County of Los Angeles ("LASC"), entitled *Richard Tabizon, as an individual and on behalf of all others similarly situated v. Covenant Transport, Inc., a Corporation*, Case No. 18STCV03468 ("Complaint"). Lee Decl. ¶ 2. The matter was filed in Los Angeles Superior Court given that Plaintiff worked for Defendant in Los Angeles County and was a resident of the State of California. *Id.,* 5. On December 7, 2018, Defendant removed the matter to the United States District Court, Central District of California. *Id.,* 6. On January 18, 2019, Defendant filed a Motion to Transfer Venue to the Eastern District of Tennessee. *Id., 7.* On February 22, 2019, the Court granted Defendant's Motion to Transfer Venue to the United States District Court for the Eastern District of Tennessee. *Id.,* 8.

On February 28, 2019, Plaintiff filed a second action against Defendant in the Superior Court of the State of California, County of Los Angeles, alleging a single cause of action under the California Labor Code Private Attorneys General Act ("PAGA") based on the same underlying claims as the class action, Case No. 19STCV07242. Plaintiff's PAGA action is stayed pending the class action. Lee Decl. ¶ 9.

After transfer of the first-filed action and as will be discussed further below, the Parties engaged in written discovery regarding Defendant's wage and hour policies and practices and

4820-3228-4913.3 / 100662-1001

ultimately agreed to participate in mediation on two occasions because the case did not settle at the first mediation. Lee Decl. ¶¶10-13. Prior to mediation, the Parties engaged in discovery, including an exchange of information and documentation about inter alia: the number of current and former putative class members who worked during the relevant time period; Defendant's policies regarding payment of wages, recording of hours and payment of wages for rest breaks, wage deductions, and reimbursements for work-related costs; time and pay records for putative class members; Plaintiff's personnel and payroll file; records related to Defendant's payroll methods and processes; and other relevant information, including correspondence and data in Plaintiff's possession. *Id.,* 10-11.

### B. The Factual and Legal Basis Supporting Plaintiff's Claims

On July 28, 2021, Plaintiff filed a First Amended Complaint ("FAC"), in which he alleges claims for (1) failure to provide proper rest periods [Cal. Labor Code §§ 201-204, 226.2 and 226.7 and the applicable IWC Wage Order]; (2) failure to provide lawful meal periods or compensation in lieu thereof claims [Cal. Lab. Code §§ 201-204, 226.7 and 512 and the applicable IWC Wage Order]; (3) itemized employee wage statement claims [Cal. Labor Code §§ 201-204, 226 and 226.2]; (4) reimbursement and unlawful deduction claims [Cal. Labor Code §§ 201-204, 221 and 2802]; (5) minimum, regular and overtime wages claims [Cal. Labor Code §§ 201-204, 510, 1194, 1197 and the applicable IWC Wage Order]; (6) violation of Unfair Competition Law claims [Cal. Bus. & Prof. Code § 17200 et seq.]; and (7) claims under the Private Attorney General Act ("PAGA") [Cal. Lab. Code § 2698 et seq.].

#### 1. Rest & Meal Period Claims

Defendant paid Plaintiff and the class on a mileage-rate basis. Tabizon Decl. ¶ 2. Plaintiff alleges that Defendant failed to pay Plaintiff and the class any wages for time spent taking rest

4820-3228-4913.3 / 100662-1001

periods as a result of being paid on a mileage-rate basis, as opposed to being paid on an hourly basis, in violation of California Labor Code §226.2, as well as *Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864, 872 (2013).

"Under the California minimum wage law, employees must be compensated for each hour worked at either the legal minimum wage or the contractual hourly rate, and compliance cannot be determined by averaging hourly compensation." (*Id.* (citing *Sheppard v. North Orange County Regional Occupational Program* (2010) 191 Cal. App. 4th 289, 297, n. 5.) *Bluford* is instructive. In *Bluford*, just as in this current case, the defendant did not separately pay its truck driver employees for rest periods, arguing that the overall mileage-rate compensation scheme incorporated and adequately compensated employees for their mandatory paid rest periods. (*Bluford*, 216 Cal. App. 4th at 871.) On appeal, the court rejected the defendant's theory, holding that "rest periods must be separately compensated in a piece-rate system" and piecemileage-rate compensation could not be averaged across a shift to meet the minimum wage requirements. (*Id.* at 872; *see also Gonzalez v. Downtown LA Motors*, LP (2013) 215 Cal. App. 4th 36, 49 (holding employers may not average piece-rate compensation across the hours of a shift to meet minimum wage requirements).) Accordingly, the Court of Appeal reversed, with instructions to the trial court to certify the class. *Bluford*'s holding was codified with slight revision in California Labor Code § 226.2, which provides that "[e]mployees shall be compensated for rest and recovery periods and other non-productive time separate from any piece-rate compensation." (Emphasis added.)

Like piece rate employees, Plaintiff and the Class were paid on a mileage rate basis. Thus, Plaintiff alleges that any time that they were not "driving", they were not paid for their time, including the time that they were legally mandated to be paid during their rest break. Thus, Plaintiff contends that the Class was owed 10 minutes of pay for each shift that they worked during the

4820-3228-4913.3 / 100662-1001

Settlement Class Period wherein the individual was entitled to a rest period.

California Labor Code §§ 226.7 and 512 require an employer to provide employees with a thirty (30) minute meal period for every five hours worked by an employee and a second thirty (30) minute meal period for every 10 hours worked by an employee. In discussing these requirements, the California Court of Appeal in *Godfrey v. Oakland Port Servs. Corp.*, 230 Cal. App. 4th 1267, 1286 (2014), review denied (February 11, 2015), affirmed an adjudication of liability where the employer failed to communicate to its drivers their right to 30-minute, off- duty meal breaks, thus failing to provide compliant meal breaks. The California Court of Appeal affirmed judgment for the plaintiffs in the face of evidence that the employer encouraged some employees to take compliant meal breaks and some in fact did so. 230 Cal. App. 4th at 1284. The Court approvingly quoted the trial court as follows:

> [T]he evidence shows AB *neither maintained, nor provided drivers, any "formal" meal period policy* …. AB does not meet the 'provide' standard because *it provided no evidence showing drivers were, at a minimum, informed in any meaningful or consistent way that they could take a meal period, or the definition of any such meal period.* 230 Cal. App. 4th at 1285. (Emphasis added.)

Plaintiff alleged that Defendant failed in its affirmative obligation to ensure that Plaintiff and other class members had the opportunity to take and were provided with compliant meal periods in accordance with the mandates of the California Labor Code and the applicable IWC Wage Order. Defendant denies these allegations.

2. *Minimum, Regular, and Overtime Wage Claim*

Plaintiff's failure to pay wages claim is premised on Defendant's alleged policy of not paying Plaintiff or Class members for on-call time spent waiting to load and unload trucks.

The Ninth Circuit's recent ruling in *Ridgeway v. Wal-Mart Inc.*, 946 F.3d 1066 (9th Cir. January 6, 2020) is directly on point. In *Ridgeway*, the Ninth Circuit affirmed the district court's

6

4820-3228-4913.3 / 100662-1001

judgment in a wage and hour class action concerning, among other things, the court's holding on partial summary judgment that, under California law, the time truck drivers spent on layover breaks was compensable so long as Walmart exercised control over the drivers during their breaks. *Id.* at 1072.

Specifically, the plaintiffs in *Ridgeway* alleged that the time they spent on layovers, which could be for many hours and in which the employees were allowed to do anything they wanted during such layover including sleeping, watching a movie, shopping, etc. still constituted hours worked and is subject to compensation because the employees were not allowed to go home without the employer's approval. *Id.* at 1079-80. The Court held that because employees were subject to this single rule, the employee was thus under the "control" of the employer during the entire layover time, and thus, should have been paid wages during the layover period pursuant to the California Labor Code. *Id.* at 1080-81. Here, like the truck drivers in *Ridgeway*, Plaintiff and the Class were required to wait for their trucks to be loaded and unloaded.

They were allowed to rest, eat a meal and be outside of their trucks during the unloading/loading process. However, they were required to be within the vicinity of their trucks so that they could move their trucks as soon as the loading/unloading process was done. Thus, like the truck drivers in *Ridgeway*, Plaintiff contends that he and the Class are entitled to payment of wages during the first 2 hours of the loading/unloading process.

### 3. Failure to Reimburse/Unlawful Deduction Claim

California Labor Code §2802 requires an employer to "indemnify his employee for all that the employee necessarily expends or loses in direct consequence of the discharge of his duties. …"

The California Supreme Court, in *Gattuso v. Harte –Hanks Shoppers, Inc.* (2007) 42 Cal. 4th 554, noted that "The author [of the amending legislation] states that Section 2802 is designed

4820-3228-4913.3 / 100662-1001

to prevent employers from passing their operating expenses on to their employees. (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1305 (1999-2000 Reg. Sess.) as amended Aug. 18, 2000, p. 3.)" *Id.* at 562 [emphasis added]. For example, employers are required to reimburse employees for the cost of automobile insurance premiums. *Id.* at 564. Employers are required to pay legal expenses that an employee incurs in defending a third-party action. *Id.* at 562. Employers are also required to reimburse employees for tools. *Id.*

In addition, California Labor Code §222.5 states "No person shall withhold or deduct from the compensation of any employee, or require any prospective employee or applicant for employment to pay, any fee for, or cost of, any pre-employment medical or physical examination taken as a condition of employment, nor shall any person withhold or deduct from the compensation of any employee, or require any employee to pay any fee for, or costs of, medical or physical examinations required by any law or regulation of federal, state or local governments or agencies thereof."

Plaintiff contended that Defendant unlawfully deducted legal plan premiums ($7.86 per pay period) from Plaintiff and the Class. Further, Plaintiff alleged that Defendant had a policy to chargeback costs to all employees for performing a drug screen ($31.00), motor vehicle report ($4.50) and DAC report ($4.50). Tabizon Decl. ¶4.

### 4. Wage Statement Claim

California Labor Code § 226(a) provides, in pertinent part:

> "Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, … an accurate statement in writing showing (1) gross wages earned, (2) total hours worked by the employee … [and] (5) net waged earned. …"

*See also McKenzie v. Federal Express Corp.*, 765 F.Supp.2d 1222 (C.D. Cal. 2011) (addressing

4820-3228-4913.3 / 100662-1001

requirements of California Labor Code § 226 and finding in favor of the plaintiff where the employer failed to properly list all hours worked).

Furthermore, under California Labor Code § 226.2, employees' wage statements must separately state the total hours of rest periods; the rate of compensation for such periods; and the gross wages paid for those rest periods each pay period. *See,* California Labor Code section 226.2(a)(2). California Labor Code section 226.2(a)(2)(B) also requires that the wage statements issued to employees include the total hours of nonproductive time, the rate of compensation for such time, and the gross wages paid for such time for that time period.

An employee suffering injury as a result of the knowing and intentional failure by an employer to comply with California Labor Code section 226(a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed the aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees. California Labor Code § 226(e)(1).

Here, Plaintiff contended that, because of the violations described above and Defendant's failure to separately compensate employees for rest periods, Defendant failed to comply with these statutory mandates and is thus subject to statutory penalties.

5. *Derivative Claims and Penalties*

Plaintiff contended that the statutory violations, as alleged above, constituted unfair business practices within the meaning of California's Unfair Competition Law. California Bus. & Prof. Code §§ 17200, *et seq.* Plaintiff also contended that Defendant would be subject to penalties under California's PAGA statute, which permits aggrieved employees to bring an enforcement action on behalf of the State of California. *See* Cal. Labor Code § 2699. Under the PAGA,

4820-3228-4913.3 / 100662-1001

employers found liable for violating the California Labor Code are subject to a statutory scheme of penalties. *See* Cal. Labor Code § 266(f) (describing penalty structure based on number of pay periods including violations). Accordingly, Plaintiff is seeking penalties under the PAGA and other penalty structures found within the California Labor Code.

## C. Summary of Defendant's Defenses to Plaintiff's Claims

In response to Plaintiff's claims, Defendant has asserted a number of significant arguments and defenses that Plaintiff's counsel took into account in reaching the settlement now before the Court.

Among its defenses and arguments, Defendant argued that California law would not apply to Plaintiff's employment-related claims because Plaintiff and the Class drove less than 23% of their time within California. As evidenced by Defendant's Motion to Transfer Venue, which resulted in this action pending before the current court, Defendant also contended that Plaintiff signed a forum-selection clause that governed his employment and the law governing it. Defendant contended that when Plaintiff began his employment with Defendant he "agree[d] and consent[ed] to the jurisdiction and venue of the state and federal courts located in Hamilton County, Tennessee" for "all matters relating to [his] . . . employment with Covenant." *See* Def's Mot to Transfer Venue, Dkt. 15-2, pg. 6. Defendant also contended that Plaintiff agreed that his "services for the purposes of employment, unemployment and workers compensation coverage are deemed to be performed entirely in the State of Tennessee…." *Id.* Plaintiff disputed these contentions, but the United States District Court for the Central District of California ultimately transferred the action to the United States District Court for the Eastern District of Tennessee.

In response, Plaintiff has argued that the California Supreme Court's ruling in *Ward v. United Airlines, Inc.* (2020) 9 Cal. 5th 732 would control and require application of California's

4820-3228-4913.3 / 100662-1001

Labor Code. In *Ward*, United Airlines alleged that the California Labor Code does not apply to flight attendants and pilots because more than 90% of their work was performed outside of California. The California Supreme Court concluded that pilots, flight attendants and other interstate transportation workers who do not perform a majority of their work in any one state is subject to the protections of the California Labor Code when their base of work operations, regardless of their place of residence or whether a collective bargaining agreement, governs their pay. *Id.* at 740 [emphasis added].

Defendant argued that a Tennessee court may not agree with the California cases cited by Plaintiff, and that if Tennessee law applies, then Defendant's piece-rate compensation system wage would be legal and Plaintiff's claims under the California Labor Code would fail.

During the pendency of this action, on January 15, 2021, the Ninth Circuit issued its opinion in *Int'l Bhd. of Teamsters, Local 2785 v. Fed. Motor Carrier Safety Admin.*, 986 F.3d 841 (9th Cir. Jan. 15, 2021). The Ninth Circuit held that the FMCSA's interpretation of 49 U.S.C. § 31141 and its determination that the federal Hours of Service rules preempt California's meal and rest break rules was valid. Thus, Defendant argued Plaintiff's meal and rest break claims are barred under the FMCSA and the Ninth Circuit's ruling.

Defendant also denied that Plaintiff's claims are amenable to class certification because individual issues predominate regarding Plaintiff's claims. For example, whether an individual class member took, or was provided the opportunity to take their meal period, would require individual inquiry. *See, e.g.*, *Lao v. H&M Hennes & Mauritz, L.P.,* No. 5:16-CV-00333-EJD, 2018 WL 3753708, at *13 (N.D. Cal. Aug. 8, 2018) (granting certification as to some claims, but denying class certification as others).

Defendant also challenged Plaintiff's meal period claims substantively. *See also Roberts*

4820-3228-4913.3 / 100662-1001

*v. Trimac Transportation Services* (N.D. Cal. August 28, 2013) 2013 WL 4647223 at *3 (holding that the employer sufficiently communicated the drivers' meal break rights by permitting drivers to take breaks "at any time before their shifts end", notwithstanding that it did not specify the times at which breaks may be permitted.).

Defendant challenged Plaintiff's minimum wage claims based on the California Supreme Court's ruling in *Oman v. Delta Air Lines*, 9 Cal.5th 762 (2020), wherein the Supreme Court held that Delta's formula for paying its flight attendances, which took the number of flight hours multiplied by a "flight rate", complied with California law even though it covered both flight and non-flight hours. *Oman,* 9 Cal.5th 762 at 784. Defendant alleged that its compensation scheme of paying for the trip, a formula using mileage and hours worked, or $1,000 per pay period, both of which are intended to cover all time worked, was similar to the compensation scheme in *Oman.*

## III. SETTLEMENT NEGOTIATIONS

The Parties attended two private, all-day mediation sessions. Lee Decl. ¶¶12-13. The Parties first mediated on October 26, 2020 before Michael L. Russel, but the matter did not resolve. Lee Decl. ¶12. On April 29, 2021, the Parties again mediated with T. Warren Jackson. Lee Decl., ¶13.

After two mediations, which were intensive and conducted at arms' length, the Parties agreed to the terms of a proposed settlement, subject to this Court's approval. Lee Decl., ¶¶12-13.

## IV. SUMMARY OF SETTLEMENT TERMS

Under the terms of the Settlement Agreement, the members of the Settlement Class (excluding those who opt-out) will discharge Defendant of all claims asserted in this Action

4820-3228-4913.3 / 100662-1001

("Released Claims").[3] Each Settlement Class Member will receive an Individual Settlement Payment from the Gross Settlement Amount, which is in the amount of $600,000.00, ("GSA"), provided that they submit a timely and valid Claim Form and become a Qualified Class Member. . *See,* Settlement Agreement, at ¶ 2.27. If this Court so approves, a total enhancement award, not to exceed $10,000.00 will be deducted from the GSA and awarded to Plaintiff. *Id.* ¶ 2.23. Costs for the claims administration will be deducted from the GSA, which are currently estimated not to exceed $14,500.00. *Id.* ¶ 3.1(d). The Settlement Agreement permits, and Class Counsel will apply for, an award of attorneys' fees not in excess of $200,000 (i.e., 1/3 of the GSA), plus litigation costs, up to $25,000. *Id.* ¶ 3.1(a). Finally, the Settlement Agreement provides that $30,000 from the GSA will be the PAGA Payment in which 75% of the PAGA Payment (i.e., $22,500) will be sent to California's Labor and Workforce Development Agency as payment for the PAGA penalty and the remaining 25% of the PAGA Payment (i.e., $7,500) will be allocated to the PAGA Employees. *Id.* ¶ 3.1(c).

After these deductions, the balance of the GSA, will constitute the "Net Settlement Amount" ("NSA"). *Id.* ¶ 3.1(f). Each Settlement Class Member shall be entitled to a pro rata portion of the remaining amount of the Gross Settlement Amount, which is known as the Net Settlement Amount as his/her/their Individual Settlement Payment provided that the Settlement Class Member is a Qualified Class Member. *Id.* Individual Settlement Payments shall be awarded to each Qualified Class Member from the Net Settlement Amount based on the number of Class Pay Periods worked by the Qualified Class Member, as a fraction of the total Class Pay Periods worked by the Settlement Class Members. *Id.* All unclaimed amounts allocated to

---

[3] The "Released Claims" are defined in Paragraph 4.4 of the Settlement Agreement and only encompass those claims pleaded by Plaintiff in the FAC.

4820-3228-4913.3 / 100662-1001

Settlement Class Members who fail to become Qualified Class Members shall remain with or be returned to Defendant. *Id.* Should less than fifty percent (50%) of the Net Settlement Amount be claimed by the Qualified Class Members, the Individual Settlement Payment for each Qualified Class Member shall be increased such that at least fifty percent (50%) of the Net Settlement Amount is distributed to the Qualified Class Members. *Id.*

Each Class Member's Individual Settlement Payments will be categorized as 50% wages and subject to applicable withholdings and 50% civil penalties and interest, which will be subject to an IRS Form 1099 misc. *Id.* ¶ 3.2(a). Defendant has agreed to pay its share of the employer's taxes separate and apart from the GSA. *Id.* ¶ 3.1(e).

Moreover, the Settlement Agreement permits Qualified Claimants and PAGA Employees to challenge the calculation of number of their pay periods worked within the Settlement Class Period and PAGA Period, and provides a resolution process for those disputes. *Id.* ¶ 6.3(d). Class Members will be informed of this process in the Notice Packet. *See id.*

## V. RULE 23 CLASS CERTIFICATION REQUIREMENTS ARE MET

To determine the fairness of any settlement agreement calling for the creation of a settlement class, courts must decide whether the settlement class meets the requirements for class certification under Federal Rule of Civil Procedure 23(a)-(b) under the lesser standards for certification of settlement classes and then determine whether the settlement is "fair, adequate and reasonable" under Rule 23(e). To begin, the Settlement Class here meets all of the requirements set forth in Fed. R. Civ. P. 23. Rule 23(a) sets out four prerequisites for certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Rule 23b(3) further provides that a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only

4820-3228-4913.3 / 100662-1001

individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. Rule 23(b).

### A. Rule 23(A)(1) Numerosity

Numerosity is easily satisfied because there are at least 1,210 Class Members. *See*, Settlement Agreement, at ¶ 2.27; *Bittinger v. Tecumseh Products Co*., 123 F.3d 877, 884, n.1 (6th Cir. 1997) (rejecting as frivolous the contention that a class of 1,100 did not meet the numerosity requirement).

### B. Rule 23(A)(2) Commonality

The commonality requirement means only that there must be at least one single question of law of fact common to the class. *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1080 (6thCir. 1996). Here, the Settlement Class easily satisfies commonality in that all Class Members share, *inter alia,* the following legal and factual questions, including whether Defendant's policies and practices violated the California Labor Code by (1) failing to provide lawful rest breaks or compensation in lieu thereof; (2) failing to provide proper itemized employee wage statements; (3) failing to reimburse business expenses and making unlawful deductions; (4) failing to pay lawful minimum, regular and overtime wages; (5) failing to provide lawful meal periods or compensation in lieu thereof; and (6) failing to timely pay wages due during employment and at termination.

### C. Rule 23(A)(3) Typicality

Under Rule 23(a)(3)'s permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical. *Bittinger v. Tecumseh Prod. Co.,* 123 F.3d 877, 884-5 (6th Cir. 1997); 7 Newberg on Class Actions § 23:21 (5th ed.) (typicality is satisfied when the named plaintiff's claims and

4820-3228-4913.3 / 100662-1001

those of other class members arise from the same event orcourse of events). Here, typicality is satisfied because the Plaintiff's claims are the same as the claims that could be brought by other class members. *See*, Tabizon Decl., ¶¶2-9. Plaintiff was a typical driver paid on a piece-rate basis, and as such, he was subject to the same pay policies that gave rise to the claims of the Class. *Id.*

### D. Rule 23(A)(4) Adequacy

Rule 23(a)(4) permits certification of a class only if the "representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P 23(a)(4). The Sixth Circuit interprets this requirement to mean that (1) the proposed class representatives and their counsel do not have conflicts of interest with the proposed class; and (2) the plaintiffs and their counsel vigorously prosecute the action on behalf of the class. *Senter v. General Motors Company*, 532 F.2d 511, 525 (6th Cir. 1976). Here, Plaintiff does not have interests adverse to those of the Class. Tabizon Decl. at ¶9. Plaintiff was a typical driver, and like the other Class Members, was subject to the same policies and compensation system that gave rise to this Action. *Id.* at ¶¶2-6. Where, as here, the claims of the Class Members and the named Plaintiff are virtually coextensive, there is no conflict. *General Tel Co. v. Falcon*, 457 U.S.147, 157-8, n. 13 (1982). Additionally, Plaintiff understands the claims and theories alleged in the case, has been involved throughout the litigation with Class Counsel and was available by phone and assisted Class Counsel so that Class Counsel could resolve the action. *Id.* at ¶¶8;. Likewise, Class Counsel has no conflict of interest and will vigorously prosecute the action on behalf of Plaintiff and the Settlement Class. Lee Decl., ¶17. Edward W. Choi of Law Offices of Choi & Associates, Larry W. Lee of Diversity Law Group, David Lee of David Lee Law, and Joshua Ward of Massey & Associates, P.C., separately and together, have significant experience litigating complex collective and class actions, and have been certified by numerous state and federal courts as competent and adequate counsel in

16

numerous wage and hour cases.  Declaration of Edward W. Choi ¶4; Lee Decl. ¶17; Declaration of David Lee ¶4; Declaration of Joshua Ward ¶4.

### E.  Rule 23(B)(3) Predominance

Predominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. 591, at 623(1997). For common questions of law and fact to predominate, the issues that are subject to generalized proof should predominate over those subject to individualized proof.  *Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361, 367(2009)(citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.* 280 F.3d 124, 136). Accordingly, courts must determine whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of individual class members. *See, e.g., In re Lorazepam & Clorazepate Antitrust Lit.,* 202 F.R.D. 12, 29 (D.D.C.2001). Here, a common nucleus of facts and issues predominates over individual issues because Plaintiff and the Class can establish all of their claims by focusing on Defendant's company-wide compensation and pay policies that applied uniformly to all Class Members and consistently throughout the Class Period. Specifically, Plaintiffs can rely on common proof that Defendant failed to pay separately and hourly for rest periods and non-driving time on its California routes, raising class-wide issues as to whether its uniform compensation systemviolates California Labor Code sections 1194 and 226.2. *See e.g., Taylor v. Federal Express*, 2015 W.L. 2358248 (E.D. Cal. May 15, 2015) (rejecting decertification of piece-rate trucker class action on the basis that there was a workable trial plan) and 2015 W.L. 4557412 (E.D.Cal. 2015 (affirming magistrate's order recommending certification of the class with claims identical to those alleged in this action); *Bluford v. Safeway Stores, Inc.*, 216 Cal.App. 4th 864, 872-3 (2013) (reversing denial of class certification in unpaid rest break class action for piece-rate truck drivers who did

4820-3228-4913.3 / 100662-1001

not receive separate and hourly pay for their time spent on rest periods); *Espinoza v. Dominos Pizza LLC*, 2009 W.L. 882845 (C.D.Cal. 2009).

Similar common proof is applicable to Plaintiff's other claims because, for example, Defendant's deduction and reimbursement policies applied equally to the Class and thus whether they were legal under the California Labor Code is a question that can be answered across the board.

Insofar as Plaintiff allege that Defendant implemented company-wide policies that deprived Class Members of all the wages due for work performed, he further allege that it also failed to pay all wages due at termination of employment to those Class Members who are no longer Defendant's employees, subjecting Defendant to potential penalties under California Labor Code § 203.

### F.   Rule 23(B) Class Action Is Superior

To determine whether the class method is superior to other means of adjudicating the claims of many courts consider: (1) the interest of class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3)the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (4) the difficulties likely to be encountered in the management of a class action.  In this case, the superiority requirement is satisfied because it would be highly inefficient for 1,210 Class Members to file individual cases; certification will provide the Class with a viable method of obtaining redress for their relatively modest individual damages; and public policy supports the use of the class action device to secure the enforcement of statutes that focus on the workplace.

4820-3228-4913.3 / 100662-1001

## VI.    PROPOSED CLASS SETTLEMENT MERITS PRELIMINARY APPROVAL

Rule 23(e) states that a court may approve a class action settlement only if it finds the settlement fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(1)(A). A district court cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. *Int'l Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). Ultimately, at final approval, courts examine seven factors in making this determination: (1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinion of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest. *Id.* at 631.

The process by which the court makes this determination, however, involves two steps: first, there must be preliminary approval of the proposed settlement and of the Notice to be sent to class members; and, second, there must be a final fairness hearing at  which class members may be heard regarding the settlement and at which other evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is considered. In connection with the first stage of the process, courts have determined that preliminary approval of the settlement and notice is appropriate if the proposed settlement: (1) falls within the range of possible approval, (2) appears to be the product of serious, informed and non-collusive negotiations; and (3) has no obvious deficiencies such as granting preferential treatment to segments of the class, granting unduly preferential treatment to the class representatives or awarding unreasonable attorneys' fees.  *See*, *Man. For Complex Lit* (3d. ed.) §30:41; *Newberg on Class Actions*, (4th ed. 2002) §§11:24-5; *In re Tableware Antitrust Litig.,* 484 F.Supp.2d 1078, 1079 (N.D.Cal.2007).

4820-3228-4913.3 / 100662-1001

## A. Settlement Agreement is Within the Range of Possible Approval

To evaluate the "range of possible approval" criterion, which focuses on "substantive fairness and adequacy," courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer. *In re Tableware Antitrust Litig.,* 484 F.Supp.2d at 1080. If the settlement confers substantial benefit, while proceeding with litigation would impose significant risks, then the settlement falls within the range of approval. *Id.*

In this case, pursuing litigation is fraught with pitfalls. Specifically, in addition to the class certification risks, Defendant will contest the applicability of California law given the forum selection and choice of law agreements specifying the applicability of Tennessee law. Moreover, even if California law is held to apply, Defendant could still win entirely on FAAAA preemption, which is an untested legal area within the Sixth Circuit. Defendant has indicated that it will vigorously contest liability and would vigorously contest Plaintiff's claims at trial; and that even if Plaintiff won at trial, the appeals process would likely be lengthy and expensive. The Settlement Agreement in this case confers a substantial benefit on the Class and, as such, falls within the range of possible approval.

Pursuant to the terms of the Settlement Agreement, Defendant will pay a Gross Settlement Amount of $600,000, plus the employer's portion of the payroll taxes on the component of the settlement payments attributable to wages, in exchange for, among other things, full discharge of Plaintiff's and the Settlement Class' release of the Released Claims. If Plaintiff were to prevail on all of his claims, the realistic total amount of California Labor Code damages would amount to approximately $7.96 million. However, if Defendant were to prevail on its defenses, the Court could award nothing to Plaintiff and the putative class. The gross settlement of $600,000.00 represents approximately 8% of the total California Labor Code damages. Lee Decl., ¶15. The

4820-3228-4913.3 / 100662-1001

total exposure for PAGA penalties is approximately $10 million. *Id.* However, PAGA penalties are also subject to any good faith defenses that Defendant may raise. *Id.* Moreover, PAGA penalties are discretionary and subject to reduction by this Court. *Id.* Pursuant to California Labor Code § 2699(f)(2), the Court can decline to award the full amount of PAGA penalties where "…if, based on the facts and circumstances of the particular case, to do otherwise, would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Indeed, courts have affirmed the reduction of PAGA penalties in the past. As shown in *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 517 (2018), the Court of Appeal affirmed the trial court's reduction of PAGA penalties by 90 percent, citing the employer's good faith attempt at complying with the law.

Once all the adequate deductions have been made from the Gross Settlement Amount, the amount available for distribution to Plaintiff and the Settlement Class is approximately $323,000.00. Lee Decl., ¶16. Assuming for the sake of estimation that 75% of Class Members become Qualified Claimants, they will receive, on average, approximately $355.92 per Qualified Claimant, calculated as follows: $323,000.00/908 claimants = $359.92 average amount per Qualified Claimant. *Id.* This amount will vary depending on how many Class Members participate and the number of weeks worked by each Qualified Claimant. *Id.* These results are reasonable, given that Class Members only drove approximately 23% of the time they were employed in California and there is a realistic possibility that there may be zero liability if the court were to find preemption for Plaintiff's claims or apply Tennessee law. Accordingly, the Settlement Agreement falls within the range of possible approval.

## B. The Settlement Was the Product of Informed, Non-Collusive Negotiations

The Settlement Agreement is the product of a non-collusive negotiation following the Parties' decision to engage in informal discovery. Both parties are represented by independent

21

4820-3228-4913.3 / 100662-1001

counsel who have considerable experience in litigating complex wage and hour class actions. Counsel for both parties conducted sufficient informal discovery and undertook a thorough legal and factual analyses in the weeks leading up to mediation. Accordingly, the briefs submitted by both parties for the purposes of mediation were fully developed and rooted in the facts underlying this case.

### C. Settlement Agreement Contains No Obvious Deficiencies

#### i. The Settlement Agreement Does Not Grant Preferential Treatment to Segments of the Class

Under the terms of the Settlement Agreement, after costs, fees and the Enhancement Awards have been paid, each Qualified Claimant will receive a proportionate share of the NSA based on the number of pay periods worked as a driver during the Settlement Class Period. This methodology was adopted to reduce potential inequities between Qualified Claimants and to optimize the claim amount for each Qualified Claimant. Because each Qualified Claimant's share of the NSA is based on a formula that includes the "pay periods worked" specific to each member, no segment of the Settlement Class is given undue preferential treatment at the expense of others. As such, the Settlement Agreement contains a rational distribution mechanism and avoids any improper, preferential treatment to any part of the Settlement Class.

#### ii. The Settlement Agreement Does Not Grant Preferential Treatment to the Class Representative

Likewise, the Enhancement Award contemplated by the Settlement Agreement, if approved by this Court, would not constitute undue preferential treatment in favor of Plaintiff. In order to determine the propriety of Enhancement Awards, a district court should consider the actions protecting class interests, the benefit provided to the class based on those actions, and the

22

amount of time and effort expended by the plaintiff. *Staton v. Boeing Co.*, 327 F.3d 938, 976-7 (9th Cir. 1993); *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) ("We also think there is something to be said for rewarding those drivers who protest and help to bring rights to a group of employees who have been the victims of [unlawful employment practices]."). In this case, Plaintiff provided significant assistance to Class Counsel during this case.

Specifically, Plaintiff undertook lengthy interviews; produced relevant documents; prepared and evaluated the case for mediation; was available by phone for two full-day mediation sessions; and carefully considered, evaluated and approved the terms of the Settlement Agreement on behalf of the Class. Tabizon Decl., ¶¶7-8, 11. These efforts were instrumental in securing the favorable terms of the Settlement Agreement, which will provide monetary compensation to a Class of approximately 1,210 current and former truck drivers of Defendant. Plaintiff also faced reputational risks and the risk of an adverse cost ruling had he not prevailed.[4] In light of these efforts and significant risks, the proposed Enhancement Award, not to exceed $10,000, is reasonable.

### iii. The Attorneys' Fees Under the Settlement Agreement Are Reasonable

The proposed attorneys' fees are within the zone of reasonableness such that the Court should allow Plaintiff to file a fees and costs motion to be heard at the same time as the final approval and fairness hearing. In cases that involve common funds, such as the one currently at issue, a court has discretion to award attorneys' fees as a percentage of the settlement. *See Paul, Johnson, et al. v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The court may consider: (1) whether counsel obtained excellent results for its client, (2) the risk involved in the representation, and (3) fees awarded in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2003). As a cross-check, the court may examine Class Counsel's lodestar. *Id.* at 1047.

---

[4] Plaintiff is also generally releasing all of his claims, thereby providing a more robust release than that of the Class. See Settlement Agreement, ¶¶ 2.23, 4.8.

4820-3228-4913.3 / 100662-1001

Here, Class Counsel achieved an excellent result for the Settlement Class. As stated above, Class Counsel secured an agreement that provides significant recovery to Class Members, whom Defendant contended had no claims at all. Underscoring the benefit conferred upon the Settlement Class is the fact that litigating piece-rate class actions is inherently risky.

Furthermore, awarding attorneys' fees in the amount of 1/3 of the GSA is consistent with fee awards in similar cases. *See*, *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 491-92 (E.D.Ca.2010) (citing to five recent wage and hour class actions where federal district courts approved attorney fee awards ranging from 30 to 33%); *Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, * 8 (S.D.Ca.) (approving fee award of 33.33% of the common fund; award was similar to awards in three other wage and hour class action cases where fees ranged from 30% to 40%); *Martin v. FedEx Ground Package System, Inc*., 2008 WL 5478576, *8 (N.D.Cal.) (trucker meal break class action where the court approved attorneys' fees of 1/3 of common fund)*; Knight v. Red Door Salons, Inc*, 2009 W.L. 248367, *5 (N.D.Cal.)(awarding 30% in attorneys' fees in a wage/hour class action with $500,000 settlement fund); *Romero v. Producers Dairy Foods, Inc.,* 2007 W.L. 3492841, *4 (E.D.Cal.) (awarding fees at 1/3 of the common fund in a meal break class action, noting: "Fee awards in class actions average around one-third of the recovery."). Where, as here, the common fund is less than $10 million, class action commentators have noted that courts typically award 30-50% of the fund as attorneys' fees. *See* Rubenstein, Conte and Newberg, *Newberg on Class Actions* at § 14:6. The Court need not decidethe exact amount of fees now, but can preliminarily approve fees up to 1/3 of the GSA and defer the actual awarding of fees and costs until after the completion of the Class Notice process, and the filing of Plaintiff's motion for an award of fees and costs, which will be heard at the time of the final fairness hearing.

4820-3228-4913.3 / 100662-1001

# VII. APPROVAL OF PAGA SETTLEMENT

California Labor Code section 2699(l)(2) provides that the court shall review and approve any settlement of any civil action filed pursuant to the PAGA. Pursuant to section 2699(l)(2), PAGA settlements must be "fair and reasonable". *See*, *e.g.*, *Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 WL 3670794, *6 (N.D. Cal. Aug. 25, 2017).

Here, $30,000 of the Gross Settlement Amount is allocated as PAGA penalties (or, phrased differently, the PAGA Settlement amount is $30,000). *See* Settlement Agreement, at ¶ 3.1(c). This amount is approximately 5% of the Gross Settlement Amount. *See Ortiz*, No. 4:16-CV-04601-YGR, 2019 WL 1780577 *5, *14 (approving settlement with PAGA allocation equal to approximately 4.8% of the settlement fund).[5] Like the class claims, Plaintiff's counsel carefully evaluated the claims, defenses, legal and factual issues, and potential value of PAGA Claims, and discussed these issues in depth with at mediation. *See* Lee Decl. at ¶15.

The PAGA Settlement is also procedurally sound. Pursuant to Labor Code Section 2699(i), 75% of the PAGA Payment are to be paid to the LWDA and the remaining 25% will be distributed to all PAGA Employees based on the number of PAGA Pay Periods Worked by each PAGA Employee during the PAGA Period, as a fraction of the total PAGA Pay Periods Worked by all PAGA Employees during the PAGA Period. Agreement at ¶¶ 2.41, 2.43, 2.44, 3.1(c). This payment is the PAGA payment to the PAGA Employees and shall be treated entirely as penalties for which an IRS Form 1099 misc., if required. Agreement at ¶ 3.2(b).

PAGA Payment checks will be issued after the Court grants approval of the PAGA Settlement and final approval of the Class Settlement along with separate checks for the Class Settlement.

---

[5] There is also a substantial history of court approval of nominal PAGA settlements. *See, e.g., Chu v. Wells Fargo Investments, LLC*, 2011 WL 672645, *1 (N.D. Cal. Feb. 16, 2011) (approving $10,000 PAGA allocation out of $6.9 million common-fund settlement); *Franco v. Ruiz Food Products, Inc.*, 2012 WL 5941801, *13 (E.D. Cal. Nov. 27, 2012) (approving $10,000 PAGA allocation out of $2.5 million common-fund settlement); *Garcia v. Gordon Trucking*, 2012 WL 5364575, *3 (E.D. Cal. 2012) (approving $10,000 PAGA allocation out of $3.7 million settlement), among many other similar approvals.

Notably, counsel in *Cashon* did not attempt to value PAGA claims, though presumably exposure would have been significant given the strength of that case. *See Cashon* Dkt. No. 84 at ¶ 44 (valuing only claims for unpaid travel time and unpaid rest breaks); *see also* n. 17.

Under the PAGA Settlement, the PAGA Employees shall release their PAGA claims in their entirety and will not have the opportunity to opt out or object to the PAGA release. Agreement at ¶¶ 3.1(c), 4.5. The Settlement Administrator will send one reminder postcard to any settlement check recipients who did not claim or not negotiate their settlement checks (including PAGA Payment Checks) within forty-five (45) days after distribution by the Settlement Administrator reminding them to claim and/or negotiate their settlement checks. Agreement at ¶ 6.10(d). Funds for PAGA Payment Checks that are not cashed by PAGA Employees after 90 days shall be paid to the Court-approved *cy pres* beneficiary of the Settlement. Agreement, ¶ 6.8(d).

In sum, the proposed PAGA Settlement is substantively and procedurally fair and reasonable and should be approved.

## VIII.   APPROVAL OF CLASS NOTICE AND CLAIM FORM

### A.  Administration of Class Notice, Objections and Claims

The Parties have selected Phoenix Settlement Administrators, an experienced claims administrator, to serve as the Settlement Administrator. Settlement Agreement at ¶ 3.1(d). Following preliminary approval of the Settlement, Defendant will provide Phoenix with (1) the full name, and last known address and full social security number of all Class Members and PAGA Employees; and (2) the information necessary to determine the estimated settlement allocation to each Class Member and PAGA Employee. *Id.* ¶ 6.1. Within fifteen (15) days of preliminary approval, Phoenix will mail all Class Members the Notice Packet, which will include the Class Notice and Claim Form. *Id.* ¶ 2.34, Exs. A, B.

Class Members have forty-five (45) days from the mailing of the Notice Packet to complete and return a Claim Form consistent with the terms of the Settlement Agreement and the Notice Packet. *Id.* ¶¶ 2.35, 6.4.

The Notice Packet informs each Class Member of his or her right to object to the Class Settlement. Settlement Class Members who wish to opt-out of the Class Settlement must submit a

26

4820-3228-4913.3 / 100662-1001

written request to opt out to the Settlement Administrator to be postmarked no later than forty-five (45) days after the notice mailing. *Id.* ¶¶ 6.5. Class Members may also object to the Class Settlement in writing by sending their objections to the Court with 45 days of the initial mailing of the Notice Packet, where they will be scanned into the electronic case docket. *Id.* ¶ 6.7.

## B. The Court Should Direct Distribution of the Notice of Settlement

This Court should order distribution of the proposed Class Notice in the manner described in the Settlement Agreement. Federal Rule of Civil Procedure 23(e)(1)(B) requires the Court to direct notice to class members "in a reasonable manner." *See also*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice by mail provides adequate "individual notice to all members." *Id.* Where the names and addresses of the class members are ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175. If notice by mail is ordered and addresses are available, as here, publication of notice is not necessary and is, in fact, "duplicative and serve[s] no purpose." *U.S. v. Truckee-Carson Irrigation Dist.*, 71 F.R.D. 10, 18 (D. Nev. 1975).

Here, the Class Members' names and last known addresses are ascertainable. The Class Members are former or current employees of Defendant, whose names, last known addresses, and social security numbers Defendant maintains in its personnel files. Although some Class Members' addresses may have changed, their Social Security numbers have not. Per the Settlement Agreement, the Settlement Administrator will use social security information to locate any Class Member whose Notice is returned as undeliverable through a skip trace. Settlement Agreement, ¶ 6.3(b). The proposed Class Notice fairly and accurately summarizes the terms of the Settlement Agreement and the Class Members' rights (including procedures for becoming a Qualified Claimant). Under these circumstances, Plaintiff submits that notice by mail is sufficient to comply

4820-3228-4913.3 / 100662-1001

with the requirements of Rule 23 and due process, and that notice as proposed should be approved.

## C.  The Proposed Class Notice and Claims Process Are Appropriate

Rule 23(c)(2)(B) provides that the Court must direct to Class Members the best notice practicable under the circumstances, including individual notice to all Class Members who can be identified through reasonable effort. The Class Notice must concisely and clearly state in plain, easily understood language: (1) The nature of the action; (2) the definition of the class certified; (3) the class claims, issues or defenses; (4) that a Class Member may enter an appearance through counsel if the member so desires; (5) that the Court will exclude from the Class any member who submits a timely and valid request for exclusion, stating when and how members may elect to be excluded; and 6) the binding effect of a judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. Rule 23(c)(2)(B).

The content of the proposed Class Notice fully complies with due process and Fed. R. Civ. P. 23. The Class Notice provides specifics regarding the date, time, and place of the Final Approval Hearing, and informs Class Members that they may enter an appearance through counsel. The Notice informs Class Members how to exercise their rights and make informed decisions regarding the proposed Settlement Agreement,  and tells them that if they do not opt out, the judgment will be binding upon them. The Class Notice informs the Class about the forthcoming application of Class Counsel for reimbursement of costs  and attorneys' fees from the Gross Settlement Amount, as well as the maximum amounts that will be sought. The Class Notice describes the terms of the Settlement Agreement, informs Class Members how Individual Settlement Awards and PAGA Payments will be determined, and provides an estimated settlement amount for each Class Member. See Settlement Agreement, Exhibit A. The detailed information in the proposed Class Notice is more than adequate to put class members on notice of the Settlement Agreement. *See,*

4820-3228-4913.3 / 100662-1001

*e.g., Mendoza v. Tucson School Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the…settlement" satisfies standards).

## IX.    CONCLUSION

For the reasons discussed above, Plaintiffs request that the Court enter an order of preliminary approval of the Class Settlement, approval of the PAGA Settlement, approve the form of the Notice Packet, and set a date for a final approval hearing to be scheduled no earlier than 120 days after entry of the preliminary approval order.

Respectfully Submitted,


 /s/ Edward W. Choi
Edward W. Choi, CA Bar No. 211334
*(Pro Hac Vice)*
edward.choi@choiandassociates.com
LAW OFFICES OF CHOI & ASSOCIATES
A Professional Corporation
515 S. Figueroa Street, Suite 1250
Los Angeles, CA 90071
Telephone: (213) 381-1515
Facsimile: (213) 465-4885

LARRY W. LEE (CA SBN 228175)
DIVERSITY LAW GROUP, P.C.
515 S. Figueroa St., Suite 1250
Los Angeles, CA 90071
Telephone: (213) 488-6555
Facsimile: (213) 488-6554
Email: lwlee@diversitylaw.com

DAVID LEE (CA SBN 296294)
DAVID LEE LAW
515 S. Flower Street, Suite 3600
Los Angeles, CA 90071
Telephone: (213)236-3536
Facsimile: (866) 658-4722
Email: David@DavidJLeeLaw.com

4820-3228-4913.3 / 100662-1001

JOSHUA WARD
MASSEY & ASSOCIATES, PC
Tennessee No. 031329
6400 Lee Highway, Suite 101
Chattanooga TN 37421
Phone: (423) 697-4529
Fax:(423) 634-8886
Josh@masseyattorneys.com

Attorneys for Plaintiff RICHARD TABIZON,
as an individual and on behalf of all others
similarly situated

4820-3228-4913.3 / 100662-1001

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of July, 2021, a copy of the  foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

By: */s/ Edward W. Choi*_____

Edward W. Choi

4820-3228-4913.3 / 100662-1001